Margarito G. HERNANDEZ,
Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant-Appellee.

No. 82–1576

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 13, 1983.

Richard O. Gonzales, David G. Hall, Texas Rural Legal Aid, Inc., Del Rio, Tex., for plaintiff-appellant.

Hugh P. Shovlin, Asst. U.S. Atty., San Antonio, Tex., H. Paul Smith, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Margarito Hernandez seeks review of a final decision of the Secretary of Health

and Human Services denying his claim for disability insurance benefits and supplemental security income. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Finding that the evidence was sufficient to sustain the Secretary's decision and that the Secretary used proper procedures in reaching his decision, we affirm.

Hernandez, born on February 22, 1937, worked primarily on jobs involving heavy labor. On May 30, 1974, he fell on his back while pulling a heavy load and has not worked since that day. After submitting three unsuccessful applications for disability insurance benefits and SSI, Hernandez again applied for these benefits on January 27, 1978. In this application, Hernandez claimed that he became disabled on May 30, 1974 because of pain in his lower back and spondylolisthesis of the fifth lumbar spine.

This application was denied both initially and on reconsideration by the Social Security Administration. Hernandez then requested and received a hearing *de novo* before an Administrative Law Judge. After summarizing the medical evidence and Hernandez' testimony at the hearing, the ALJ first found that Hernandez' exertional impairments prevented him from performing his past work but did not prevent him from performing sedentary work. He then found that Hernandez' capacity to perform sedentary work and his vocational characteristics coincided with the characteristics set forth in the Social Security Administration's Medical-Vocational Guidelines. *See* 20 C.F.R. subpart P., app. 2, §§ 200.00–204.-

00 (1982). Application of this guideline directed a finding that Hernandez was "not disabled." [1] The ALJ also noted that Hernandez' non-exertional limitations did not affect this result. This decision was approved by the Appeals Council on September 4, 1980. The district court granted summary judgment on February 8, 1982. Hernandez appeals.

This court's role on appeal is limited to a determination of: (1) whether substantial evidence exists in the record to support the decision that claimant is not disabled, *see Western v. Harris,* 633 F.2d 1204 (5th Cir. 1981); and (2) whether the Secretary applied the proper legal standards in evaluating the evidence, *see Smith v. Schweiker,* 646 F.2d 1075, 1076 (5th Cir.1981). Hernandez invokes both reviewing functions in his attack on the ALJ's conclusion that the Secretary met the burden of showing that Hernandez could perform some type of substantial gainful activity.[2] Specifically, Hernandez claims: (1) that the Secretary considered his impairments separately rather than in combination as required by 20 C.F.R. § 404.1526(a) (1982); (2) that the ALJ failed to give appropriate weight to the opinion of the treating physician; (3) that the ALJ improperly applied the Medical-Vocational Guidelines; and (4) that the Secretary did not meet his burden because he failed to offer a vocational expert's testimony regarding the jobs Hernandez was capable of performing. Hernandez thus urges us to remand the case to the ALJ.

---

**1.** Rule 201.23, found to be applicable here, reads as follows:

Table No. 1 – Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s).

| Rule 201.23 | Age | Educ. | Prev. Work Experience | Decision |
|---|---|---|---|---|
| | Younger individual age 18–44 | Illiterate or unable to communicate in English | Unskilled or None | Not Disabled |

**2.** The Secretary does not challenge the finding that Hernandez met his burden of proving an inability to perform his former work. The only issue here is whether the Secretary met his burden of proving that Hernandez is capable of

We will examine each contention separately.

### Failure to Consider Combined Effects of Impairments

■ Citing 20 C.F.R. § 404.1526(a) (1982), Hernandez argues that the ALJ incorrectly considered his exertional impairments separately from his non-exertional impairments rather than in combination. 20 C.F.R. § 404.1526(a) provides:

> We will decide that your impairment(s) is medically equivalent to a listed impairment in Appendix 1 if the medical findings are at least equal in severity and duration to the listed findings.... If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the *combination* of your impairments is medically equal to any listed impairment.

*Id.* (emphasis added).

Hernandez' reliance on this regulation is misplaced. The ALJ did not here follow the commands of § 404.1526(a) because he implicitly determined that the procedure embodied by that regulation was inapplicable. Under the Secretary's systemized procedure for sequentially evaluating a disability claim, the ALJ first must determine whether the claimant is working, 20 C.F.R. § 404.1520(b) (1982),[3] or whether the claimant does not have a severe impairment, § 404.1520(c). In either case, the claimant is considered not disabled. If, however, an individual's impairment meets the durational requirement of at least twelve months and is listed in Appendix 1 of the regulations or is determined to be the medical equivalent of a listed impairment, the claimant is considered disabled. § 404.-1520(d). Section 404.1526(a) comes into play here by indicating how "medical equivalence" is determined. If a finding of disability *vel non* cannot be determined by

these three steps, but the claimant does have a severe impairment, the ALJ then must evaluate the claimant's "residual functional capacity," age, education, and work experience to determine whether the claimant can do other work. § 404.1520(e), (f). The ALJ's opinion in this case bypassed the first three steps and instead evaluated Hernandez' residual functional capacity and other characteristics. It thus reflects a judgment that the first three steps, including the one involving § 404.1526(a), were not determinative. Hernandez has made no suggestion to the contrary. For this reason, the ALJ was not required to follow the explicit direction of § 404.1526(a).

### Testimony of Treating Physician

■ Hernandez introduced into the record the medical reports of Dr. Luis Gonzalez Rios, whom he characterizes as his "treating physician." One of these reports, dated February 4, 1978, stated that Hernandez "is totally disabled at the present time." Citing case law requiring the ALJ to accord "substantial weight" to the opinion of a claimant's treating physician, Hernandez now argues that the ALJ's opinion is flawed because it does not mention the reports of Dr. Rios and does not reveal what weight, if any, was given to the doctor's opinions. *See, e.g., Wiggins v. Schweiker,* 679 F.2d 1387, 1389–90 (11th Cir.1982).

■ While Hernandez accurately states the law regarding testimony of treating physicians, he misstates the facts regarding the status of Dr. Rios. There is no record evidence that Dr. Rios actually was Hernandez' treating physician. Dr. Rios first examined Hernandez on September 15, 1976 and diagnosed his back pain as "spondylolisthesis of L5, first grade." He made the same diagnosis on February 4, 1978, adding that the patient is "totally disabled." Dr. Rios did not see Hernandez again. Hernandez' testimony at the hearing also casts doubt on his characterization of Dr. Rios.

---

performing work that currently exists in the national economy.

**3.** These provisions are numbered differently from those used by the ALJ in 1979 but they are substantially the same.

Though testifying that Dr. Rios gave him advice and recommended surgery, Hernandez also stated that he was not then seeing a doctor, had not seen one since 1978, and had dealt only with doctors sent to him by the Social Security Administration. In short, Dr. Rios was no more familiar with Hernandez' injuries, course of treatment, and responses over a considerable length of time than were other physicians. The ALJ thus was not required to accord his testimony greater weight than that of other physicians.

### Use of Medical-Vocational Guidelines

Having analyzed Hernandez' residual functional capacity, age, work experience, and education, the ALJ referred to the Secretary's Medical-Vocational Guidelines, 20 C.F.R. subpart P, app. 2, §§ 200.00–204.00 (1982). Based on his findings, the ALJ determined that Rule 201.23 of Table 1 applied and directed a conclusion of "not disabled." Hernandez does not now dispute the four findings on which the ALJ based his determination of nondisability. He also does not argue that reliance on the guidelines is insufficient to satisfy the Secretary's burden of proof in situations where the guidelines' four factors coincide precisely with the claimant's particular situation. Instead, he argues that the guidelines were either inapplicable or of limited use because of the presence of non-exertional impairments.

First, Hernandez argues that the guidelines are inapplicable if a claimant's impairments are solely non-exertional. The guidelines state:

> Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural or manipulative limitations.... In the evaluation of disability where the individual has solely a non-

exertional type of impairment, determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in this Appendix 2. The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.

20 C.F.R. subpart P, app. 2, § 200.00(e)(1). Hernandez then contends that his impairments are wholly non-exertional because they include severe back pain (a "postural" limitation), numbness on his left side (a "sensory" limitation), an inability to move his fingers (a "manipulative" limitation), and emotional problems (a "mental" limitation). He thus concludes that the ALJ should not have applied the guidelines.

Though we again agree with Hernandez' statement of the law, we cannot agree that his impairments were completely of a nonexertional nature. Hernandez' own testimony belies this assertion. At the hearing, Hernandez stated that "I cannot lift anything that is heavy. I cannot bend. I cannot do things that require heavy exercise." Because Hernandez' impairments "manifest[ed] [themselves] by limitations in meeting the strength requirements of jobs," the guidelines were applicable here.

Alternatively, Hernandez argues that the ALJ improperly applied the guidelines by treating his exertional and non-exertional impairments separately and then determining on the basis of the medical-vocational grid that substantial gainful work existed that he could perform. Hernandez argues that the ALJ instead should have considered whether work existed for a person with the *combination* of impairments he possessed. Indeed, the guidelines recognize this procedure:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations

alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

20 C.F.R. subpart P, app. 2, § 200.00(e)(2).

To support his argument, Hernandez relies on *Burnam v. Schweiker,* 682 F.2d 456 (3d Cir.1982), in which the Third Circuit held that the ALJ had erred in applying the guidelines to a claimant who suffered from several impairments. The court held:

Having determined on the basis of the grid that Burnam was not disabled based on his exertional impairments, the administrative law judge failed to follow the regulatory directive that he then consider "how much [Burnam's] work capability [was] further diminished in terms of any types of jobs that would be contraindicated by [his] nonexertional limitations." 20 C.F.R. pt. 404, subpt. P. app. 2, § 200.-00(e)(2) (1981). These nonexertional limitations included a 100 percent hearing loss in Burnam's left ear and a 71 percent hearing loss in his right ear; visual acuity of 20/400 bilaterally, corrected only to the extent of 20/200 in his left eye and 20/100 in his right eye; and anxiety and depression. The administrative law judge chose to disregard these nonexertional limitations on the ground that, *standing alone,* they would not be sufficient to find that Burnam was disabled.

*Id.* at 458 (footnote omitted) (emphasis in original). This case, however, is materially different from *Burnam.* Here, the ALJ did not fail to follow the regulatory directive that he consider "how much [Hernandez'] work capability [was] further diminished in terms of any types of jobs that would be contraindicated by [his] nonexertional limitations." Instead, the ALJ first determined that Hernandez' exertional impairments did not amount to a disability under the guidelines and then concluded that Hernandez' "non-exertional limitation(s) [do(es)] not significantly affect maximum sustained work capability for sedentary work and, therefore, considering the claimant's residual functional capacity ..., the claimant is found 'not disabled.'" Unlike in *Burnam,* the ALJ here considered Hernandez' exertional and non-exertional impairments as a whole and determined that the latter did not further diminish his work capability.

■ Contrary to Hernandez' suggestion, we find that this decision is supported by substantial evidence. Dr. Alfred Hill, a neurologist and psychiatrist, stated that Hernandez'

[r]eflexes are physiological and equal. There is no evidence of any muscle wasting or tone change. I observe that when he used the muscles of his supposedly dead left hand in fastening buttons or his belt [,] usage is normal.... There is no evidence of nervousness or disturbance in mental faculties.... He is not disabled, in my opinion.

Dr. Newsom Stool, an orthopedic surgeon, also noted that Hernandez could use his hands for simple grasping, pushing and pulling, and fine manipulation. Finally, Dr. George Schlagenhauf, a psychiatrist, stated that although there was a "significant emotional component" to Hernandez' illness, Hernandez was

in no acute physical distress. He does not demonstrate unusual anxiety during the interview. His speech is spontaneous but as mentioned, he speaks only Spanish. He seems to answer questions relevantly and coherently. His mood and affect are not unusual. He does not describe any delusions or hallucinations. He is oriented as to time, place, and person. His intelligence is estimated to be average or

slightly below. His memory seems good for both recent and remote events. His judgment seems to be reasonably good. This evidence thus supports the ALJ's determination that Hernandez' non-exertional impairments do not limit his ability to perform sedentary work.[4] It follows that the guidelines were properly applied here.

### Vocational Expert Testimony

 Finally, Hernandez contends that the ALJ failed to "use a vocational expert to determine what types of jobs [Hernandez] could perform considering his nonexertional and manipulative limitations." Citing *Ferguson v. Schweiker,* 641 F.2d 243, 248 (5th Cir.1981), Hernandez argues that when a claimant can perform only limited types of sedentary activity, a vocational expert must be called to testify that jobs requiring only the activities which the claimant can perform exist in the economy.

This argument is flawed because it assumes that Hernandez' non-exertional impairments somehow limit his ability to perform sedentary work. Yet, the ALJ expressly rejected this assumption and his decision is supported by substantial evidence. When, as here, the factors used in the guidelines coincide with the claimant's actual situation, the guidelines substitute for vocational expert testimony and permit the ALJ to take administrative notice of the existence in the economy of jobs that a claimant could fill. *See Salinas v. Schweiker,* 662 F.2d 345, 348–49 (5th Cir.1981). In any event, the regulations explicitly empower the Secretary to use his discretion in employing the services of a vocational expert. See 20 C.F.R. § 404.1566(e) (1982). *See also Jones v. Heckler,* 702 F.2d 616 (5th Cir.1983). Accordingly, the ALJ's use of these regulations in lieu of vocational expert testimony was proper.

For these reasons, we reject Hernandez' suggestion to remand and affirm the district court's judgment upholding the Secretary's decision to disallow Hernandez' application for disability insurance benefits and SSI.

AFFIRMED.

---

4. This case is distinguishable from *Thomas v. Schweiker,* 666 F.2d 999 (5th Cir.1982), on which Hernandez relies. In *Thomas,* the claimant submitted evidence indicating that her disabling symptoms were intensified by exposure to dust, fumes, and heat. We reversed the ALJ's finding of no disability and remanded because he "failed to address the question raised by the evidence of whether it supports a finding that Thomas' ability to work is restricted by an environmental, as well as an exertional limitation." *Id.* at 1004. In contrast, the ALJ here did address a similar question and, as we have shown, correctly resolved it.