# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 17, 2007**

Charles R. Fulbruge III
Clerk

_____

No. 06-31062
Summary Calendar
_____

LINDA D TAYLOR,

Plaintiff-Appellant

versus

MICHAEL J ASTRUE, Commissioner of Social Security

Defendant-Appellee

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CV-1930

_____

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Linda Taylor appeals the district court's decision to affirm the administrative law judge's ("ALJ's") finding that she is not entitled to social security benefits. For the following reasons, we AFFIRM.

## I.  FACTS AND PROCEEDINGS

On November 2, 1999, Taylor filed a claim for disability benefits and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq. She asserted that she had been disabled since August 18, 1991, due to the loss of full use of the left side of her body (including her left hand and leg), diabetes, and high blood pressure. Her initial claim was denied, as was her request for reconsideration.[1] She then requested a hearing before an ALJ. The ALJ conducted a hearing on January 10, 2002, and issued a decision concluding that Taylor was not disabled within the meaning of the Social Security Act. The ALJ thus denied benefits to Taylor. After the Appeals Council affirmed the ALJ's decision, Taylor filed this action. A magistrate judge heard her case and recommended affirming the ALJ's decision. The district court adopted that recommendation and denied relief. Taylor now appeals.

## II. STANDARD OF REVIEW

This court reviews a denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). A final decision is supported by substantial evidence if we find relevant evidence sufficient to establish that a reasonable person could reach the same conclusion reached by the Commissioner. Id. In our review of the evidence, we do not substitute our judgment for the Commissioner's judgment. Id. If there are conflicts in the evidence, we accept the Commissioner's resolution of those conflicts so long as that resolution is supported by substantial evidence. Id.

## III. DISCUSSION

The ALJ uses a five-step sequential analysis to evaluate claims of disability: (1) whether the claimant is currently engaged in substantial gainful

---

[1] Taylor apparently stopped working on July 1, 1980, because she became pregnant.

activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., § 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam). Here, the ALJ found that Taylor retained the residual functional capacity to do a number of jobs; she thus failed the fifth step of the analysis.

Rather than directly challenging the substantiality of the evidence supporting the ALJ's decision, Taylor challenges the steps the ALJ took to obtain the evidence. When Taylor applied for benefits in November of 1999, she identified the Medical Center of Louisiana at New Orleans ("MCLNO") as the only place where she had received treatment. Further, the field officer who initially assessed her noted that her only difficulty in movement was a slow and stiff gait. Taylor indicated that no doctor had any medical records or information about her health or impairments. The Commissioner then obtained Taylor's previous year's records from MCLNO. The records indicated that Taylor had visited MCLNO five times in the previous year, largely for checkups related to her diabetes.[2] On two of those visits, she reported that she was walking for exercise.

For reasons that are unclear from the record, the Commissioner ordered

---

[2] Taylor was non-compliant with her prescribed diabetes medication on three occasions.

3

a consultative evaluation by Dr. Mandich on December 17, 1999.[3] Dr. Mandich concluded that Taylor suffered from hypertension that could be controlled with medication, adult-onset diabetes, and had a history of stroke in 1992 with slight residual stiffness to the left leg and subjective feelings of diminished fine coordination in the left hand. The Commissioner then turned Taylor's files, including the report from Dr. Mandich, over to two Administration medical consultants, both of whom concluded, in reports completed on January 31, 2000, and February 11, 2000, that Taylor was capable of light work. On February 25, 2000, the Commissioner told Taylor that she did not qualify for benefits.

On May 1, 2001, Taylor requested a hearing before an ALJ. In her request for the hearing, she identified Dr. Weisberg as a treating physician. This was the first indication to the Commissioner that she might have a treating physician. Records provided by Dr. Weisberg indicate that he first saw Taylor on November 3, 1995. Dr. Weisberg observed that Taylor walked very slowly and could only walk a couple of blocks before her left foot began to drag. He also noted that her left arm and hand were weak and she had some difficulty performing rapid successive movements with her left hand. He concluded that her motor disorganization interfered with her daily living, specifically noting that it took her 10 times longer to dress herself than it normally would. Dr. Weisberg also noted that although her speech was slightly slurred, he could easily understand what she was saying. Dr. Weisberg did not see Taylor again until May 26, 2000, over four years later. On that visit, Weisberg noted the same problems, concluding that Taylor showed "a moderate degree of motor disorganization" in her left arm and leg. Dr. Weisberg also concluded that

---

[3] Given the rather limited information and documentation provided by Taylor, it would be reasonable to assume the Commissioner requested this consultation in order to make an informed decision about the nature of her disability.

Taylor was not capable of living independently.

By the time of Taylor's second recorded visit to Dr. Weisberg, she had already filed for benefits, seen Dr. Mandich, and been denied benefits. Still, she asserts that (1) the Commissioner should not have ordered or relied on the consultative evaluation; (2) the ALJ should have recontacted the "treating physician," Dr. Weisberg, in order to resolve discrepancies between his findings and those of Dr. Mandich; and (3) the ALJ should have given Dr. Weisberg's opinion controlling weight. These claims are essentially procedural in nature.

"Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988). We will thus only remand "if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988). The burden for proving a disability is on the claimant, so it is ultimately her responsibility to provide evidence supporting her claims. See 20 C.F.R. § 416.912(a). Given the very limited medical information that Taylor provided when she applied for benefits, the Commissioner was certainly justified in ordering a consultative evaluation to determine the nature of her disability. See id. § 416.912(f). Though Taylor points out that the Commission must make "every reasonable effort" to obtain the necessary evidence from either a treating physician or her "own medical sources," Dr. Weisberg's identity was entirely unknown at the time the exam was ordered. Further, there is no indication that MCLNO would have been able to provide any additional relevant information about Taylor's condition—the Commissioner requested and received Taylor's full medical history from MCLNO—so there is no reason in the record suggesting that the Commissioner should have recontacted MCLNO before ordering a consultative evaluation. See id.

5

Once the ALJ was presented with Dr. Mandich's report, it was the ALJ's prerogative to decide how much weight it would receive. Taylor asserts that because she had identified Dr. Weisberg as her treating physician by the time of the hearing before the ALJ, the ALJ should have deferred to his opinion or conducted a detailed analysis of his views as described in 20 C.F.R § 404.1527(d)(2). However, nothing about Taylor's relationship with Dr. Weisberg establishes the "longitudinal" pattern of care described in section 404.1527(d)(2); Taylor's two visits to Dr. Weisberg, four years apart, are the sort of "individual examinations" that are distinguished in the regulation from the continuous care provided by a treating physician. The ALJ did not need to accept Taylor's assertion that Weisberg was her treating physician at face value, given the limited treatment relationship she established with him. See Hernandez v. Heckler, 704 F.2d 857, 860–61 (5th Cir. 1983) (affirming ALJ's determination that a doctor who only saw the claimant twice in a 17-month period was not a treating physician). Because Taylor's two visits to Dr. Weisberg did not establish him as her treating physician, the ALJ did not err by not attempting to resolve his statements with Dr. Mandich's conclusions. Nor was it error to deny Dr. Weisberg's opinion controlling weight.

Taylor also asserts that the ALJ made errors of fact in rejecting Dr. Weisberg's findings. Specifically, she contends that, contrary to the ALJ's findings, (1) Dr. Weisberg's findings were not inconsistent with those of Dr. Mandich; (2) Dr. Weisberg's findings were not based on Taylor's subjective complaints; and (3) Dr. Weisberg's findings were not contrary to the weight of the medical evidence.

Taylor's first assertion is belied by the fact that she rests her procedural claim on a contention that the ALJ should have given more weight, not less, to Dr. Weisberg's findings, and that if the ALJ did so she would have prevailed.

The record makes clear that Dr. Weisberg and Dr. Mandich did not have identical views of the nature of Taylor's medical condition.

The ALJ stated that Dr. Weisberg's opinion "appears to be based on the subjective complaints of [Taylor] which he takes at face value." This statement was a reference to Dr. Weisberg's conclusion that Taylor was not capable of independent living despite being able to cook, clean, and perform other household activities. The ALJ found Dr. Weisberg's conclusion to be inconsistent with his observations and thus found that Dr. Weisberg was crediting Taylor's self-evaluation. The record supports this finding, as well as the related finding that Dr. Weisberg's conclusion that Taylor was incapable of independent living was contrary to the weight of the medical evidence. Both Dr. Mandich and a vocational expert procured by the ALJ found that Taylor's disabilities were not so severe as to preclude employment.

## IV. CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.