IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-41477
Summary Calendar

REBECCA C. GALLARDO,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. 00-CV-84)
_____
February 22, 2002

Before REAVLEY, DAVIS and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Rebecca Gallardo appeals the district court's decision granting

summary judgment against her claim for social security benefits, and denying her Rule

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

60(b) motion to set aside the judgment based on new evidence.  We AFFIRM.

## I.    Background

Appellant Gallardo filed a claim for Title II disability insurance benefits and Title XVI social security benefits due to epiglottitis[1] and vocal cord paralysis on May 21, 1993. The administrative law judge (ALJ) found that Gallardo was not disabled, but the Appeals Council remanded the case to the ALJ for more careful application of standards governing the severity of impairment.  On remand, the same ALJ found that Gallardo was severely impaired by a restrictive airway disease and several psychological problems, including delusional and somatoform[2] disorders.  However, the ALJ also found that Gallardo had the residual functional capacity to perform a full range of light work, and thus denied her request for benefits.

On Gallardo's appeal, the district court remanded the case to the ALJ for additional fact-finding on the issue of Gallardo's residual function capacity.  The new ALJ combined this proceeding with a hearing on a separate but factually similar claim for benefits Gallardo had filed on August 20, 1997.  In his February 23, 1999 decision, the ALJ denied Gallardo's claims for benefits in their entirety.  The district court affirmed the ALJ's decision.

---

[1] Inflammation of the cartilage covering the windpipe.

[2] Neither party has clearly defined this condition, though Gallardo's doctors have apparently used the phrase synonymously with hypochondria, to describe Gallardo's tendency to exaggerate her illnesses and symptoms as a coping mechanism.

## I.   Rule 60(b)(2) Motion

Gallardo claims that the district court erred by refusing to set aside its judgment against her based on new evidence showing a somatoform disorder.  A district court may set aside a final judgment if the movant supplies "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[3]  To prevail on a Rule 60(b)(2) motion, the movant must show that it exercised due diligence in obtaining the evidence, and that the evidence is "material and controlling and clearly would have produced a different result if presented before the original judgment."[4]  A district court's Rule 60(b)(2) ruling is reviewed for abuse of discretion.[5]

The district court in this case properly denied the Rule 60(b)(2) motion because Gallardo could have obtained the evidence prior to judgment had she used due diligence.[6]  The evidence at issue consists of notes by treating doctors from 1982, 1985 and 1986, that Gallardo suffered from a somatoform disorder.  Specifically, she points to:

---

[3] FED. R. CIV. P. 60(b)(2).

[4] Government Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc., 62 F.3d 767, 771 (5th Cir. 1995).

[5] Id. at 770.

[6] Gallardo argues that we should not consider arguments made by the Commissioner in support of the district court's Rule 60(b) decision because the Commissioner did not respond to the motion in the district court.  With or without the arguments made by the Commissioner, the district court's order was not an abuse of discretion.  Gallardo does not argue that it was inherently an abuse of discretion for the district court to deny an unanswered motion.

- a March 1982 discharge summary prepared by Dr. Guinn, stating that she had a "mild neurotic hypochondriacal profile";
- a July 1985 discharge summary prepared by Dr. Guinn noting "tendencies to somatosize interpersonal problems";
- a June 1986 discharge summary prepared by Dr. Guinn listing a "schizoid personality disorder with somatization disorder"; and
- a July 1985 letter from Gallardo's psychologist Dr. Kathleen Davis to Dr. Guinn, reporting "somatic symptoms and hypochondriacal concerns."

Gallardo has not explained why, with due diligence, she could not have discovered her own medical records during either the administrative proceedings or prior to judgment. She concedes that she had in her possession and submitted to the ALJ Dr. Guinn's 1986 discharge report, which clearly stated his opinion that she had a somatization disorder.[7] We also note that Gallardo's consultative psychologist, Dr. Rogers, prepared a report on March 11, 1996 stating that Gallardo was aware at that time of a 1986 diagnosis of a "psychosomatic" disorder. If this disorder formed part of her claimed disability,[8] Gallardo displayed a lack of diligence by failing to obtain Dr. Guinn's other notes that might have elaborated on the problem, or notes prepared by Dr. Davis, the psychologist to whom Dr. Guinn had referred her. She has not articulated "any other

___

[7] Gallardo has failed to address the district court's belief that the additional discharge summaries would be merely cumulative.

[8] Gallardo also has not clearly explained why these older diagnoses are material to her case. In her Rule 60(b) motion she attempted to argue that diagnosis of a somatoform disorder with onset before age 30 meets or equals a disability listed in Appendix I of the Social Security benefit regulations, and so renders her presumptively disabled without a need for vocational analysis. Not only was this a new argument after entry of judgment, but in her opening brief on appeal she did not argue that the ALJ erred by deciding the case at "step five," concerning residual functional capacity, rather than "step three," concerning presumptive disabilities. See Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000) (outlining the five step sequential process of evaluating disability claims).

4

reason justifying relief" from the district court's final judgment.

## II.    Denial of Benefits

Federal court review of a denial of social security or disability benefits is limited to whether the decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards to the evidence.[9]   In the present case, the ALJ reached his decision at step five of the analysis, with a finding that despite Gallardo's severe impairments, she had the residual functional capacity to perform a significant number of jobs in the national economy.  We review *de novo* the district court's summary judgment holding that this decision was supported by substantial evidence and legally correct.[10]

First, Gallardo makes the cursory argument that the ALJ's denial of benefits was incorrect because he failed to further investigate her somatic disorder as recommended by Dr. Cegalski, the medical expert.  "The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts."[11]  However, the decision to require a consultative examination is discretionary, and is not required unless "the record establishes that such an examination

_____

[9] Newton, 209 F.3d at 452.

[10] Brock v. Chater, 84 F.3d 726, 727 (5th Cir. 1996).

[11] Id. at 728 (citing Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984)).

is *necessary* to enable the administrative law judge to make the disability decision."[12]

In the present case, the ALJ denied the request because Gallardo had already had multiple examinations, and none of her doctors suggested that additional investigation of her condition was required. The record further supports the ALJ's rejection of Dr. Cegalski's recommendation for an additional examination because Dr. Cegalski also testified that Gallardo had not experienced the psychological problems at issue in a year. Gallardo has not cited or applied relevant legal standards to explain why the ALJ's refusal to authorize an additional consultative examination was an abuse of discretion.

Second, Gallardo argues that the ALJ failed to adequately credit the opinion of Dr. Sharon Rogers, a psychologist who had assigned her a relatively low Global Assessment of Functioning (GAF) score of 60 and reported "somatic delusions." However, "[t]he court does not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[13]

As noted by the district court, the ALJ explained at some length why he did not think that Dr. Rogers's ultimate conclusion about Gallardo's capacity to function was consistent with her underlying observations. Instead, he credited the assessment of another psychologist, Dr. Stephen Williams, who had examined Gallardo twice, and more

---

[12] Jones v. Bowen, 829 F.2d 524, 526 (5th Cir. 1987) (citations and internal quotations omitted) (emphasis in original).

[13] Newton, 209 F.3d at 452.

6

recently than had Dr. Rogers. Dr. Williams reported in 1997 that Gallardo's responses were generally appropriate and coherent, and that she was able to engage in normal living and social activities. He assigned her a GAF range of 68-72. Dr. Williams's assessments provide substantial evidence for the ALJ's determination at "step five" of the disability analysis that Gallardo had the residual functional capacity to perform a significant range of work in the national economy.

Finally, Gallardo argues generally that the evidence supporting the ALJ's decision was not substantial and that the court is "not excused" from scrutinizing the entire (1000+ page) record to conduct a substantial evidence review. Gallardo has not identified any other specific problems with the ALJ's decision, and has not identified parts of the record to support her vague argument. We follow the lead of the district court and decline the invitation to review the record from scratch.

AFFIRMED.