United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 06-50913
_____

STEPHEN BEDFORD,

          Plaintiff-Appellant,

versus

MICHAEL ASTRUE,

          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(No. 1:05-CV-129)
_____

Before JOLLY, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

 Stephen Bedford appeals the district court's decision to affirm the administrative

law judge's ("ALJ's") finding that he is not entitled to social security benefits. For the

following reasons, we AFFIRM.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

Bedford filed a claim for disability benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* His initial claim was denied, as was his request for reconsideration. He then requested a hearing before an ALJ. The ALJ conducted a hearing on February 14, 2002, and issued a decision that was partially favorable to Bedford. The Appeals Council reviewed the case and remanded the matter to the ALJ. After supplemental hearings, the ALJ issued a decision on June 22, 2004, finding that Bedford was not disabled and thus not entitled to disability insurance benefits. After the Appeals Council affirmed the ALJ's decision, Bedford filed this action. A magistrate judge heard his case and recommended affirming the ALJ's decision. The district court adopted those recommendations and denied relief. Bedford now appeals.

## II. STANDARD OF REVIEW

This court reviews a denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). A final decision is supported by substantial evidence if we find relevant evidence sufficient to establish that a reasonable mind could reach the same conclusion reached by the Commissioner. *Id.* In our review of the evidence, we do not substitute our judgment for the Commissioner's judgment. *Id.* If there are conflicts in the evidence, we accept the Commissioner's resolution of those conflicts so long as that

2

resolution is supported by substantial evidence. *Id.*

## III. DISCUSSION

The ALJ uses a five-step sequential analysis to evaluate claims of disability: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., § 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

The nature and origin of all of Bedford's health problems is somewhat hard to discern from the record. Bedford apparently suffered an injury to his left eye as a child, leaving him blind in that eye. At some point, he lost some of the vision in his right eye as well. In 1983, he slipped on a floor and injured his right wrist. In February 1992, he suffered lacerations to three of the fingers on his left hand, as well as some injury to his left forearm in a lawnmower accident. He also suffered injuries to his back and hands in automobile accidents sometime prior to 1993. In 1986, a car on a jack dropped on top of him, causing injury to his back. Bedford received disability benefits from 1992 to 1993, though his benefits were terminated in October of 1993. He was insured for disability

3

benefits through December 31, 1997.

In 1993, Bedford saw a neurologist, Dr. Hummer, who believed that Bedford was suffering from reflexive sympathetic dystrophy ("RSD") in his left arm and ordered an MRI of his cervical and lumbar spinal regions. Bedford's RSD was attributed to the lawnmower accident. The cervical MRI revealed no abnormalities and the lumbar MRI revealed only a mild bulge at L5-S1. Dr. Hummer later concluded that Bedford demonstrated no outward indication of RSD.

In February 1994, Dr. Horn noted that he believed Bedford suffered from depression with sleep disturbance. However, no evidence indicates that Bedford sought or received treatment for depression at that time.[1] Once in 1995 and again in 1996, Bedford returned to see Dr. Hummer for treatment for chronic pain. Dr. Hummer noted in 1995 that he could not explain the reason for Bedford's reported symptoms and the fact that they appeared to worsen.

On July 7, 2000, Bedford visited Dr. Ramirez, a clinical psychologist. Dr. Ramirez performed a full psychological evaluation and concluded that Bedford suffered from dysthymic disorder (a form of depression), demonstrated some features of paranoid personality disorder, and had a global assessment of functioning ("GAF") score of 50, indicating serious psychological symptoms. He noted that Bedford was likely to be suicidal, should be monitored and should possibly be given anti-depressant medication.

---

[1] Bedford saw a family physician, Dr. Bristol, several times from 1993 to 1997. Dr. Bristol's records do not contain any indication of depression.

4

On December 4, 2000, Bedford visited Dr. Biebendorf, who assessed him to have "pain syndrome, without concurrent physical findings," vision loss in his left eye (and 20/40 vision in his right eye), and "probable mental depression."

On April 21, 2003, Bedford was evaluated by Dr. Maksymowicz, who determined that he had a "mild depression," was not taking any antidepressants, and suffered from "polysubstance abuse," including alcohol, marijuana and possibly cocaine or crack use.[2]

On August 21, 2003, Bedford received an opthalmological evaluation from Dr. Lowell, who concluded that Bedford had minimal vision in his left eye, but 20/25 vision in his right eye with an adequate visual field in that eye. The technician who evaluated Bedford during this visit determined that Bedford had an "essentially normal" visual field in his right eye.

The ALJ found that Bedford was not disabled because his impairments were not sufficiently severe to meet the listed definitions. Specifically, the ALJ found that Bedford suffered severe back pain, left eye blindness, major depressive disorder, and substance abuse, but none of these maladies met the requirements of the relevant listed impairments. The ALJ did find that Bedford was unable to perform any of his past relevant work.[3] However, the ALJ also concluded that Bedford retained the residual functional capacity to perform a significant range of medium-duty work. Further, the ALJ concluded that

---

[2] Bedford denied using cocaine or crack, though Dr. Maksymowicz noted a history of such abuse and a report of Bedford tending to minimize his drug use.

[3] Bedford previously worked as a directory assistant.

Bedford had the mental capacity to perform work "where interpersonal contact is only incidental to work performance." The ALJ thus concluded that Bedford was not entitled to disability benefits.

## A. Challenge to the ALJ's findings of fact

On appeal, Bedford asserts that the ALJ erred in finding that his disabilities did not meet listed impairments 2.03 and 12.04.[4] *See* 20 C.F.R. § 404, Subpt. P., App. 1, § 2.03 (visual impairment based on contracted visual field in the better eye), 12.04 (affective disorder). Regarding his visual disorder, Bedford asserts that the ALJ erred by giving no reason that the opinion of Dr. Gordy,[5] who testified as an expert that Bedford met the criteria in 2.03, "is not based on substantial evidence." This argument misstates the standard by which we evaluate ALJ determinations. In short, the ALJ and the magistrate judge found that Dr. Lowell, who performed a full opthalmological examination of Bedford and found that he had left eye blindness and 20/25 vision in his right eye when corrected, was credible and that his opinion was entitled to great weight. Bedford contends that the ALJ should have deferred to the opinion of Dr. Gordy, who concluded that Bedford met the criteria for disability without examining him. The ALJ's resolution

---

[4] Despite considerable medical record evidence and testimony about Bedford's problems with his back and extremities, no physician testified that he met the listed impairment criteria for maladies related to these parts of his body.

[5] Dr. Gordy testified at Bedford's hearing without having previously examined or treated him.

6

of the conflict between Dr. Lowell and Dr. Gordy is clearly supported by sufficient evidence and we thus affirm it.

Bedford does not explain in any detail why the ALJ erred in finding that he did not meet the criteria for depression in listed impairment 12.04. The ALJ assigned controlling weight to the opinion of Dr. Maksymowicz, who examined Bedford on April 21, 2003 and concluded that he suffered from only slight limitations in activities of daily living. This was in contrast to Dr. Lam, who submitted a report indicating that Bedford suffered marked restriction of daily activities and marked difficulties in social functioning, but who also indicated that Bedford had only experienced "one or two" repeated episodes of decompensation. The ALJ noted that Bedford had exhibited some depressive symptoms in 1994 but had sought no treatment from 1995 to 2000. Further, the ALJ noted that an evaluation of Bedford by Dr. Ramirez in July of 2000 yielded a primary diagnosis of dysthymic disorder (depression), alcohol abuse, and cocaine dependence (in remission). The ALJ discounted Dr. Ramirez's finding that Bedford suffered from depression because his symptoms were also linked to his alcohol abuse. The ALJ thus concluded that Dr. Maksymowicz's evaluation was entitled to the greatest weight, and concluded that, based on his evaluation and the fact that Bedford only intermittently presented to physicians with symptoms of depression, his illness did not meet the requirements of the listed impairment. This decision was clearly supported by substantial evidence.[6]

---

[6] Bedford asserted to the district court that the ALJ erred by not making a finding that he was unable to maintain employment, citing our decision in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002). *See also Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)

7

## B. Challenge to the ALJ's application of the law

Bedford contends that the ALJ failed to give proper weight to the assessment of his treating physician. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). However, the ALJ retains the ability to select among the opinions presented by examining physicians, and need not regard a treating physician's opinion as conclusive. *Newton*, 209 F.3d at 455. In addition, "[t]he opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

Bedford repeatedly refers to the evaluation of Dr. Gordy in his brief and urges this court to evaluate Dr. Gordy's opinion as though it were that of a treating physician. Dr. Gordy did not treat Bedford; he examined the records of those doctors who did and arrived at his own conclusions about the nature of Bedford's disability. In fact, the ALJ pointed out in his opinion that he was not assigning controlling weight to Dr. Gordy's

---

(holding that an ALJ must determine whether a claimant can both find and hold a job). Bedford does not assert this position on appeal. Further, the ALJ specifically found no evidence in the record indicating that Bedford's depression manifested itself for several years, indicating that maintaining employment would not have been a problem during that time. There was no indication of the persistent or recurrent symptoms that plagued the plaintiff in *Singletary*. *See Singletary*, 798 F.2d at 822 ("In this case, there is no question but that [plaintiff] presented such evidence" indicating "that his mental condition is a long-term problem and not just a temporary set-back.")

8

opinion because neither Dr. Gordy, nor the treating physicians upon whose reports Dr. Gordy based his opinion, had recently examined Bedford. Dr. Gordy apparently based his opinion on the opinions of Dr. Lam, Dr. Foreman, and Dr. Biebendorf.

Dr. Lam's report is largely conclusory, with limited details as to the nature of Bedford's depression. Dr. Foreman never actually examined Bedford, and Dr. Biebendorf concluded only that he had no vision in one eye and that he suffered "[p]robable mental depression." The ALJ reviewed Dr. Biebendorf's report and noted that it revealed that Bedford had "essentially no physical abnormalities" that would support his disability claim. The ALJ was justified in finding that Dr. Gordy's assessment and the evaluations of these three physicians was entitled to less weight than that of the physicians who examined Bedford.[7]

Bedford also asserts that the ALJ improperly placed the burden of credibility on him and failed to explain the reasons that his testimony about his limitations was found not to be credible. To the contrary, the ALJ pointed out that all medical testing to date failed to explain Bedford's symptoms or support his contentions about his alleged inability to perform work. Specifically, an MRI, electromyography, and nerve conduction studies all located no abnormalities that would explain his condition. Further, there was no evidence in the record that Bedford regularly pursued physical or mental health treatment from 1995 to 2000. The ALJ is entitled to determine credibility and weigh testimony.

_____

[7] Bedford's brief does not specifically contrast the opinions of the various doctors who examined Bedford, apart from a statement that the opinions of Dr. Ramirez and Dr. Maksymowicz "cancel each other out."

9

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ's credibility determination is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). The ALJ set forth several facts underlying the determination that Bedford was not credible, including citations to medical record evidence. In light of the discretion to which the ALJ is entitled, this contention has no merit.

## IV. CONCLUSION

For the foregoing reasons, the order of the district court is AFFIRMED.