# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2012

No. 11-30691
Summary Calendar

Lyle W. Cayce
Clerk

KATHERINE ROLLINS

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
No 2:10-CV-2922

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

Katherine Rollins sought disability benefits, alleging that problems with

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30691

her hand, obesity, and diabetes kept her from working.  After losing before an Administrative Law Judge ("ALJ"), she sued, arguing that the ALJ did not properly explain his opinion.  While contesting that the ALJ's explanations are inadequate, she also challenges certain facts the ALJ relied on.  Because the ALJ followed the proper legal requirements and made a decision supported by substantial evidence, we affirm.


I.

In November 2008, Rollins filed an application for a period of disability and an application for supplemental security income; the alleged disability began June 30, 2008.[1]  Rollins had stopped working at that time to move to another city with her sister.  She began searching for work after moving but went to the hospital in October 2008 with a swollen right arm (her dominant arm).  The swelling eventually went away, and in February 2009 she once again searched for employment.

After the claims were initially denied, a hearing was held in July 2009 before the ALJ.  Rollins and an impartial vocational expert, Deborah Bailey, testified, and medical evidence was presented.  Rollins is five feet three inches tall and weighs 380 pounds.  She testified that she could cook and wash dishes, shop for groceries by riding around in a cart, and use a computer for up to an hour, but that the longer she used her right arm, the longer it took to feel better.  She said if she sat for too long, her back hurt and she had trouble getting up.  She also admitted to being able to walk short distances, up to a couple blocks.

Medical evidence was conflicted.  The treating physician, Evablanche Centanni, claimed Rollins could not ambulate effectively on a sustained basis without significant pain, or stand for 2 hours a day carrying 20 pounds, or alternate

---

[1] Rollins later claimed instead the disability began in October 2008.

No. 11-30691

sitting and standing without elevating her feet.  Centanni also advised that tasks that required significant use of Rollins's right hand would be "contraindicated by her condition."  Dr. Jack Rentz conducted a physical examination of Rollins in January 2009 and found good motor tone, ability to ambulate without assistance (but not bend and squat without difficulty), 5/5 for grip strength, adequate fine motor movements, ability to grasp objects bilaterally, ability to sit but not walk or stand for a full work day, and ability to lift and carry without limitation.  He concluded obesity and diabetes mellitus were Rollins's most severe problems.

A state medical expert, Dr. Anthony Scardino, also examined the medical record and felt that Rollins could lift 20 pounds occasionally or 10 pounds frequently; stand or walk for 2 hours of an 8-hour workday; sit for 6 hours of a workday; occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; and never climb ladders, ropes, or scaffolds.  He found no manipulative limitations.

Considering all the above information, the ALJ determined that Rollins had several severe impairments: obesity, hypertension, and diabetes mellitus.  Examining the medical evidence provided, as well as the opinions from treating and non-treating physicians, the ALJ determined that Rollins had the residual functional capacity ("RFC") to perform sedentary work with certain limitations: (1) pushing and pulling at the sedentary level; (2) required sit/stand option; (3) unable to operate foot controls or climb ladders, ropes, or scaffolds; (4) can occasionally stoop, crouch, kneel, crawl, or climb ramps or stairs; and (5) able to do frequent handling, fingering, and feeling.

After the Appeals Council denied her request for review, Rollins sued, and the district court upheld the ALJ's decision.  Rollins appeals, arguing that the ALJ rejected her treating physician's findings without an adequate explanation.

II.

3

No. 11-30691

Federal courts review a denial of social security benefits to determine whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Rollins's first argument is that the ALJ did not adequately explain why he rejected Centanni's opinion regarding Rollins's medical condition. A treating physician's opinion should be given great weight in determining disability but may be given little or no weight where good cause is shown. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)

Rollins recognizes that the ALJ purported to provide some explanations for rejecting Centanni's findings; she merely argues those reasons were insufficient. The ALJ, however, provided many grounds for his decision. He pointed out that Rentz identified Rollins's obesity and diabetes as her most limiting factors. He then listed reports that came back normal: gait and station; rising from sitting position; standing on tiptoes, heels and tandem walk without problems (although not able to bend and squat without difficulty); and "5/5 grip strength with adequate fine motor movements, dexterity and ability to grasp objects bilaterally." After that, the ALJ explained, giving Rollins's testimony limited weight, that she was restricted to only frequent[2] manipulation of objects.

Addressing Centanni's opinion, the ALJ noted that Centanni claimed Rollins could not ambulate effectively on a sustained basis without pain, stand for 2 hours of an 8-hour workday while lifting or carrying 20 pounds, alternate standing and sitting without walking around or reclining, or sit for 6 of 8 hours without elevating her feet. The ALJ then discounted Centanni's opinion for being more restrictive than any other assessment, inconsistent with Rollins's own statements, and unsupported by the objective medical evidence discussed earlier in the opinion.

---

[2] This means engaging in the activity for up to 6 hours in an 8-hour workday.

No. 11-30691

A.

Rollins takes exception with this explanation for multiple reasons.  First, nothing in the discussion discounting Centanni's opinion specifically mentions his finding about Rollins's hand.  She argues that broadly declaring all of a physician's findings wrong without specifically examining each fails the 20 C.F.R. § 494.1527(d)(2) requirement to provide good reasons for the weight given to the treating doctor's opinion.

Although not written out as plainly as it could have been, even without specifically mentioning Centanni's evaluation of Rollins's manipulative limitations, the opinion does provide reasons for rejecting the doctor's opinion.  Among the list of tests Rentz conducted on Rollins that came back normal, the ALJ listed grip strength, fine motor skills, dexterity, and ability to grasp objects bilaterally.  The ALJ concluded from these normal test results that none of those areas was problematic for Rollins, including grasping and manipulating objects.  Then, the ALJ explained that he took Rollins's own testimony into account and so, instead of finding no limitation on manipulation, found that she was limited only to frequent handling, fingering, and feeling.

The ALJ also explained that he discounted Centanni's testimony because Centanni's opinions were more restrictive than anyone else's and contradicted the record evidence.  Determining that Centanni was exaggerating Rollins's limits in multiple areas calls his credibility into question and could rightly lead the ALJ to view his opinions more skeptically on the whole.[3]  As described above, Centanni placed far more severe restrictions on Rollins's abilities than did Rentz

---

[3] *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("The ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly" (internal quotation marks omitted)).

No. 11-30691

or Scardino.[4] Rentz's opinions were backed by objective tests that supported his findings against Centanni's as well.[5] Finally, Centanni's opinions conflicted with some of Rollins's statements.[6] Overall, this explanation adequately shows that the ALJ's RFC finding was sufficiently set forth, and there was substantial evidence in the record to support it.[7]

---

[4] Scardino's report directly states that Rollins has no manipulative limitations. Contrary to Rollins's assertions, however, this is not a case of a non-examining physician's testimony alone trumping a treating physician's. Rentz, an examining physician, provided contrary medical opinions. Scardino's evaluation of the medical record merely adds strength to Rentz's position by having it confirmed by an outside physician who reviewed the medical records. This distinguishes the present case from *Newton*, 209 F.3d at 458 ("[T]his is a case where the ALJ summarily rejected the opinions of Newton's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.").

[5] The magistrate judge also recommended that Centanni's medical opinion could have been given less weight because his medical report was only a two-page, check-the-box form with no elaboration given. Title 20 C.F.R. 404.1527(d)(3) does provide that the ALJ can change the weight given to a medical opinion based on how well supported or how conclusory the opinion is: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." Though that seems to allow check-the-box forms without additional explanations to be given less weight, we need not address whether the form here was too conclusory to be considered, because the ALJ did not mention it in his decision, and the remaining record contained substantial evidence supporting the decision to accord Centanni's opinion less weight.

[6] Rollins testified that she reposted her resume in February 2009 because the swelling in her arm had resolved, which suggests against finding deep vein thrombosis to be a problem after that, although she took it down when she realized how much it hurt to use the mouse still. In her function report, she says she can fold laundry if she takes her time. Rollins also testified she saw no reason she could not take another job like her last one (where she sat and did sedentary work for long stretches of time) as long as she did not have to use a computer too much. She made other statements that suggest limited abilities to use her hands, including washing dishes (though it hurts her hand after ten minutes), letting her cat in and out of the house (although she cannot open the can to feed it), caring for personal needs (although she needs help pulling up her pants and has to sit down to shower), and using the computer for about an hour at a time (then her hand weakens). These highly qualified statements are all qualified in ways that do not appear to contradict Centanni's statement that Rollins cannot engage in substantial use of her hand.

[7] The ALJ also stated that he noticed during the hearing that Rollins could ambulate around the room without the assistance of devices and that she sat through the hour-long hearing not appearing discomforted. We have explained that an ALJ cannot rely on his opin-

(continued...)

No. 11-30691

B.

Second, Rollins maintains that there is actually no contrary medical evidence in the record, because only Centanni ever examined her for problems from sustained use of her right hand. Rollins's argument is that all of Rentz's examination findings are only for problems using her hand at the moment, whereas Centanni checked for problems coming from sustained use, which is what she argues makes her disabled.

First, Rentz was examining Rollins in relation to a claim of disability, so it seems unlikely that when the rest of his evaluation was focused on how she could function throughout a workday, he would use only tests of her hand that would provide no information regarding continued use throughout the day. Significantly, no medical opinion or evidence in the record claims his testing would not have identified limitations coming from sustained use, and the non-examining physician who reviewed the medical evidence, Scardino, felt there was enough evidence to declare that Rollins had no manipulative limitations. Because problems from sustained use that would limit the amount of manipulation a person can do throughout a work day constitute a manipulative limitation, we have at least Scardino's medical opinion that the medical evidence sufficiently accounted for sustained use. Because there is no medical-opinion evidence or expert analysis arguing the testing done was inadequate, there is substantial evidence on the record to support the ALJ's determination that there was medical evidence contradicting Centanni's claims.

---

[7] (...continued)

ions regarding medical evidence, without supporting medical testimony, to derive an applicant's RFC. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Because without this evidence the record contains substantial evidence to support the ALJ's decision, we need not determine whether such a finding violates that prohibition. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988) (applying harmless-error analysis in disability-benefits context).

No. 11-30691

C.

Finally, Rollins argues that the ALJ opinion improperly rejected Centanni's opinion without going through all the factors set forth in 20 C.F.R. § 404.1527(d)(2). Although *Newton*, 209 F.3d at 456, does explain that the ALJ must consider each of the factors in § 404.1527(d)(2) when rejecting or giving little weight to a treating specialist's opinion, that decision also stated that

> [t]he Court concludes that, *absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist*, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2).

*Id.* at 453 (emphasis added). The plain implication of that statement is that where there is reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in § 404.1527(d)(2) is unnecessary.

The medical tests done by Rentz that found no restrictions on Rollins's manipulative abilities are reliable medical evidence contradicting Centanni's opinion. Thus, with reliable medical evidence contradicting that opinion, the ALJ's recognition that Centanni's opinion was inconsistent with objective medical findings, other doctors' opinions, and the record as a whole satisfies the Social Security Administration's requirement "always [to] give good reasons . . . for the weight we give your treating source's opinion." § 404.1527(d)(2).

Moreover, any error in the ALJ's failure to walk explicitly through each factor in § 404.1527(d)(2) was harmless, further supporting that remand is unnecessary. "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). The ALJ's opinion addresses consistency with the record and with reliable medi-

cal evidence, two of the factors.

Additionally, though not expressly stated, the record evidence contained all the information required for all but one of the other factors:  The medical records of the different appointments and treatments show the length of treatment, the frequency of examination, and the nature and extent of the treating relationship.  Thus, the ALJ saw all the evidence he was required to consider under § 404.1527(d)(2), and it is unlikely to change his mind to look at it again.  The only factor not in the record is whether Centanni has a relevant specialty for examining Rollins's hand, although even if he did, a specialists opinion still cannot trump contrary medical evidence.  *See Newton*, 209 F.3d at 453.  Therefore, a remand is inappropriate, because Rollins's substantive rights were not affected.

## III.

Rollins contends that SSR 96-9p required the ALJ to declare her disabled, because her disability was a significant manipulative limitation.  That provision sets forth policies regarding RFC assessments for less than a full range of sedentary work, explaining that these are severe limitations, but does not necessarily require a finding of disability.  It says any significant manipulative limitation in bilateral handling of small objects significantly erodes the unskilled sedentary occupation base, and it gives, as an example, that an individual who cannot perform any occupation requiring bilateral manual dexterity would be disabled.  The paragraph also says that for less significant limitations, especially to the non-dominant hand, consulting a vocational resource may be useful.  Rollins argues that since Centanni said her manipulative limitation was so severe, it should count as a significant limitation under SSR 96-9p, and she should be declared disabled without seeking a vocational expert's opinion.

Rollins's argument hinges, however, on the ALJ's determination of her

RFC's being incorrect.  The ALJ found that Rollins could frequently handle, finger, and feel.  We already found that determination supported by substantial evidence, so Rollins does not have a manipulative limitation so severe that SSR 96-9p recommends she be declared disabled without even consulting a vocation expert.  Once the ALJ determined her limitations were less extreme that Centanni stated, Bailey was properly consulted and determined that Rollins could still perform her past job as a call-center operator or various other jobs.

Because the ALJ adequately explained why he gave little credit to Centanni's opinion and how he determined Rollins's RFC, and those decisions were supported by substantial evidence, we AFFIRM the judgment denying the disability claim.