**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 14, 2009

Charles R. Fulbruge III
Clerk

No. 08-30989

ROBERT THIBODEAUX

Plaintiff-Appellant

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:07-CV-3647

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

In this disability-insurance case, Robert Thibodeaux asserts that he was entitled to benefits for the period from April 7, 2003 to May 5, 2005 due to a combination of related impairments, including depression, insomnia, mood swings, poor concentration, and fatigue, which together rendered him unable to work. The administrative law judge ("ALJ") determined that Thibodeaux was not disabled, and the Social Security Appeals Council denied Thibodeaux's request for review, affirming the ALJ's decision as the final decision of the Social

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Security Commissioner. The district court upheld that decision. Thibodeaux appeals, arguing that the ALJ failed to properly weigh the opinions of his treating psychiatrist, Dr. Kennison Roy, and therapist, William Bischoff. Thibodeaux also argues that the ALJ made factual findings based on a misinterpretation of the mental residual functional capacity ("MRFC") opinion provided by the non-examining state medical consultant, Dr. Yvonne Osborne.

For the reasons stated below, we AFFIRM.

## I. The Applicable Legal Standards

### A. Standard of Review

The Commissioner's decisions are reviewed by this court only to ascertain whether (1) they are supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). This court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *See Newton*, 209 F.3d at 452. Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council. *Id.* at 455.

### B. The Standard for Entitlement to Social Security Benefits

The claimant has the burden of proving he has a medically determinable physical or mental impairment lasting at least twelve months that prevents him from engaging in substantial gainful activity. *Newton*, 209 F.3d at 452 (citing 42 U.S.C. § 423(d)(1)(A)). Substantial gainful activity is defined as work activity

involving significant physical or mental abilities for pay or profit. *Id*. at 452–53 (citing 20 C.F.R. § 404.1572(a) and (b)).

The ALJ uses a five-step sequential process to evaluate claims of disability in which he must determine whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. *Id*. at 453 (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner for the fifth step. Thus, the claimant must show first that she is no longer capable of performing her past relevant work. *Id*. (citing 20 C.F.R. § 404.1520(e)). If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy. *Id*. (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding. *Id*. (citing *Chaparro*, 815 F.2d at 1010). A finding that the claimant is not disabled at any step is conclusive and ends the inquiry. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994)).

## II.    The ALJ's Consideration of the Opinions of Roy and Bischoff

In a letter dated June 7, 2006, Dr. Kennison Roy, a psychiatrist who had been treating Thibodeaux, opined that Thibodeaux displayed symptoms of severe depression when Roy first began seeing Thibodeaux in early 2003, and that further evaluation and examination indicated an attention deficit disorder. Roy stated that medication was ineffective and Thibodeaux's symptoms of depression remained, his thought processes were scattered, and his sleep was disturbed such that he was barely functional. Roy stated that he diagnosed Thibodeaux

with bipolar disorder in February 2005, and that Thibodeaux exhibited a "dramatic" positive response to Geodon, a medication used by some doctors to treat bipolar disorder. Roy opined that Thibodeaux was "psychiatrically disabled" from January 2003 through mid 2005, and "his impairment prevented him from sustaining full time gainful work activity over any significant period of time between those dates."

In a letter dated April 20, 2005, William Bischoff, a social worker who had been Thibodeaux's therapist for almost three years, described Thibodeaux's troubled personal life and employment history, his long history of depression and related alcohol dependence, and his difficulties remaining awake and focused at work. Bischoff opined that Thibodeaux suffered from depression, alcohol dependence, and a sleep disorder. He also opined that "another possibility that merits consideration" was that Thibodeaux suffered from bipolar disorder, and that the extensiveness of Thibodeaux's depression "may have hidden" it. Bischoff opined that Thibodeaux's clinical history showed that his cognitive functioning, memory, sustained concentration and persistence, and social interaction/adaptation were significantly to severely affected, and that these deficiencies can affect the quantity and quality of performance of specific work-related activities, and that the sudden emergence of Thibodeaux's sleep disorder "presents a dangerous implication for the execution of [specific work activities]."

The ALJ found that the evidence did not support the opinions of Roy and Bischoff because: (1) Thibodeaux did not seek a level of treatment commensurate with the alleged severity of his disability, specifically that his treatment only consisted of undergoing sleep studies in March, May, and December 2003, visiting Roy occasionally for medication management, and visiting Bischoff; (2) on September 11, 2003, Roy recommended that Thibodeaux begin a job search because he seemed able to return to the workplace; (3) Thibodeaux met the conditions for unemployment benefits from September 2003 through April 2004,

specifically that he was ready, willing, and able to work, and attended daily AA meetings; and (4) Thibodeaux's claim that he was cured of his disability almost immediately after he began taking the medication Geodon was not credible. The ALJ conceded that the evidence showed that Thibodeaux possessed some mental limitations during the claimed period of disability, but based on the entire record, including opinion evidence from other medical experts, found that Thibodeaux retained the ability to perform full-time, sustained work activity at all times during that period, and that his claimed symptoms and limitations were exaggerated and not corroborated by the evidence. The ALJ cited a medical opinion provided on August 18, 2003 by neurologist Mossadiq Jaffri, who examined Thibodeaux and opined that his medical history did not reveal a neurological deficit, that he did not suffer from narcolepsy, and that his excessive sleepiness resulted in an impairment that was "mild to moderate" and not significant enough to justify disability. The ALJ also cited a medical opinion provided by psychiatrist Gregory Paul, who examined Thibodeaux on June 7, 2005. Paul opined that Thibodeaux should continue to follow up with his current outpatient treatment for depression and alcohol dependence, that his medical history was not consistent with bipolar disorder, and that he did not currently appear to have a psychiatric disorder that would impair him from functioning acceptably in some type of work environment. Paul noted that Thibodeaux reported that medication had been very effective in treating his insomnia.

The ALJ has sole responsibility for determining the claimant's disability status. *Newton v. Apfel*, 209 F.3d at 455 (5th Cir. 2000). However, the medical opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses, should ordinarily be accorded great weight in determining disability. *Id.* at 456–58. The ALJ must show good cause for assigning a treating physician's medical opinions little or no weight, such as by showing that the opinion is conclusory, unsupported by medically acceptable

clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. *Greenspan*, 38 F.3d at 237. Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the medical opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2), including: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 453, 456. A determination by a treating physician that an applicant is "disabled" or "unable to work" is not a medical opinion entitled to deference, but rather a legal conclusion "reserved to the Commissioner." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Thibodeaux contends that the ALJ failed to show good cause for assigning little or no weight to the opinions of Roy and Bischoff because the ALJ did not explain what was inadequate about the treatment that Thibodeaux sought, or what additional treatment he could have sought. However, as discussed above, the ALJ's view that a person with Thibodeaux's alleged symptoms and limitations would have sought more intensive treatment was only one of a number of reasons that the ALJ provided in explaining why the evidence did not support those opinions. The ALJ also based this finding on the fact that on September 11, 2003, Roy recommended that Thibodeaux begin a job search because he seemed able to return to the workplace; that Thibodeaux met the conditions for unemployment benefits from September 2003 through April 2004 and attended daily AA meetings; and that Thibodeaux's claim that he was cured of his disability almost immediately after he began taking the medication Geodon was not credible.

Thibodeaux also contends that the ALJ failed to properly weigh the opinions of Roy and Bischoff because the ALJ failed to analyze those opinions using the criteria set forth in 20 C.F.R. § 404.1527(d)(2), and there was no reliable medical evidence from a treating or examining physician controverting the those opinions because Paul rendered his opinion after the claimed period of disability, and Jaffri evaluated Thibodeaux's neurological, not psychiatric, condition, and did so only four months into the claimed disability period.

The ALJ credited Roy's opinion regarding Thibodeaux's general symptoms, but not Roy's opinion concerning the severity of those symptoms and the limitations they imposed on Thibodeaux, specifically that Thibodeaux's "sleep was disturbed such that he was barely functional." Roy's opinion concerning the severity of Thibodeaux's symptoms before he began using Geodon was directly contradicted by Jaffri's August 18, 2003 opinion that Thibodeaux did not suffer from narcolepsy and that his excessive sleepiness resulted in an impairment that was "mild to moderate." Jaffri assessed the severity of Thibodeaux's excessive sleepiness generally. His opinion was not limited to evaluating the severity of any neurological deficit, and, indeed, he opined that there was no evidence of such a deficit. Although Thibodeaux claims that his symptoms were the product of a psychiatric, not neurological, condition, the dispute between Roy and Jaffri concerned the general severity of the observed symptoms. Even if Roy's opinion as to the severity of Thibodeaux's symptoms should have been accorded greater weight as a specialist, *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994), the medical opinion of Jaffri was still reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, meaning that the ALJ was not required to apply the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *See Newton*, 209 F.3d at 453, 456. Substantial evidence, including Jaffri's medical opinion, the fact that on September 11, 2003, Roy recommended that Thibodeaux begin a job search, and the fact that Thibodeaux

met the conditions for unemployment benefits from September 2003 through April 2004 and attended daily AA meetings, supports the ALJ's finding that there was good cause to disregard Roy's opinion on the severity of Thibodeaux's impairment. Also, Roy's opinion that Thibodeaux "was psychiatrically disabled" from January 2003 through mid 2005, and that "his impairment prevented him from sustaining full time gainful work activity over any significant period of time between those dates," is a legal conclusion not entitled to any deference. *See Frank*, 326 F.3d at 620.

The opinion provided by Bischoff is not entitled to the same deference as the opinion provided by Roy because Bischoff is a therapist, which is not an "acceptable medical source" under the social security regulations. 20 C.F.R. § 404.1513(a), (d)(1); *see also Lacroix v. Barnhart*, 465 F.3d 881, 885–86 (8th Cir. 2006). Only "acceptable medical sources" can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. Social Security Ruling 06-03p, 71 Fed. Reg. 45593-03, 2006 WL 2329939 (Aug. 9, 2006); *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (discussing SSR 06-03p and related regulations); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (same); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (same); *Lacroix*, 465 F.3d at 885–86 (same). Substantial evidence supports the ALJ's finding that the evidence did not support Bischoff's opinion. *See Lacroix*, 465 F.3d at 885–86 (holding that although therapists' opinions were not entitled to treating source weight, they were entitled to consideration). Bischoff's opinion concerning the severity of Thibodeaux's sleep disorder, specifically that it "present[ed] a dangerous implication for the execution of [specific work activities]," was contradicted by Jaffri's medical opinion. Bischoff's opinion concerning the severity of Thibodeaux's symptoms apart from his insomnia are contradicted by the medical opinion of Paul, who opined that

Thibodeaux's medical history was not consistent with bipolar disorder, and that following the amelioration of his insomnia, he did not appear to have a psychiatric disorder that would impair him from functioning acceptably in some type of work environment. Although Paul examined Thibodeaux after he had begun using Geodon, that medication addressed only Thibodeaux's insomnia according to Paul, not his depression and alcohol dependence, and Paul's opinion on bipolar disorder was based not only on his examination but on Thibodeaux's medical history. Also, as discussed above, on September 11, 2003, Roy recommended that Thibodeaux begin a job search, and Thibodeaux met the conditions for unemployment benefits from September 2003 through April 2004 and attended daily AA meetings.

The ALJ properly weighed the opinions of Roy and Bischoff.

## III. The ALJ's Alleged Misinterpretation of Osborne's Opinion

Thibodeaux argues that the ALJ misinterpreted the mental residual functional capacity ("MRFC") opinion provided by the non-examining state medical consultant, Dr. Yvonne Osborne, and that therefore the ALJ's denial of benefits was not supported by substantial evidence because the ALJ cited Osborne's opinion in determining that Thibodeaux was not disabled. Thibodeaux asserts that the ALJ interpreted Osborne's description of Thibodeaux's limitations as "moderate" as indicating a less significant impairment than Osborne intended. Specifically, Thibodeaux contends that the ALJ interpreted Osborne's description of the limitations on Thibodeaux's ability to carry out repetitive tasks and detailed instructions as "moderate" to mean that Thibodeaux's ability to do so was satisfactory, and that this interpretation is at odds with Osborne's statement that Thibodeaux's capabilities included implementing "some semi-complex instructions" and completing "simple repetitive tasks."

The ALJ clearly did not misinterpret Osborne's opinion. The full text of the portion of Osborne's opinion cited by Thibodeaux is as follows:

> Mr Thibodeaux [is] capable of sustaining the basic mental demands of work. He is able to understand, remember, and implement simple instructions and some semi-complex instructions. He is able to sustain attention for at least two hours at a time, pace work activities, and persist on task to the extent typically require[d] to complete simple repetitive tasks. He is able to accept and respond to correction from supervisors; and he is able to get along with coworkers. Mr. Thibodeaux can identify and avoid hazards in the workplace, and he can adjust to changes in job requirements and settings. He is able to perform at least routine repetitive tasks.

Osborne's description of Thibodeaux's capabilities as including implementing "some semi-complex instructions" and completing "simple repetitive tasks," among other capabilities, was intended to illustrate Osborne's overall conclusion that "Mr Thibodeaux [is] capable of sustaining the basic mental demands of work." That opinion clearly supports the ALJ's determination that Thibodeaux was capable of working and was not disabled during the claimed period of disability. The ALJ did not misinterpret Osborne's opinion concerning Thibodeaux's capacity to work.

## IV. Conclusion

The ALJ employed the proper legal standards, and the ALJ's decision is supported by substantial evidence. The judgment of the district court is AFFIRMED.