# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60115
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2014

Lyle W. Cayce
Clerk

SANDI HATHCOTE VAUGHN,

      Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

      Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:13-CV-72

Before PRADO, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:*

On May 19, 2010, *pro se* Plaintiff-Appellant Sandi Hathcote Vaughn ("Vaughn") applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. The Commissioner of Social Security (the "Commissioner") initially denied Vaughn's application. Vaughn requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60115

November 30, 2011. After this hearing, the ALJ determined that Vaughn was not disabled and again denied her benefits. Vaughn then sought review of the ALJ's decision by the Appeals Council, which denied Vaughn's request for review rendering the ALJ's decision final. Vaughn now appeals the decision of the district court, which affirmed the Commissioner's final decision denying her application for disability benefits. Because the record contains substantial evidence in support of the denial of benefits, we AFFIRM.

## FACTS AND PROCEDURAL HISTORY

On May 19, 2010, Vaughn applied for disability benefits alleging that she was unable to work due to depression, social anxiety, and a bipolar disorder. Vaughn asserted that these conditions resulted in an inability to work as of June 15, 2009. She also alleged that she was terminated from her position with a former employer, Carlock Nissan of Tupelo, Inc. ("Carlock Nissan") on that same date.[1]

Vaughan was fifty-two years old at the time she filed her application for disability benefits. She was a high school graduate and had attended college for three years. Vaughn's prior work experience consisted of positions as a sales router, a receptionist, a craft show director, and a customer relations manager.

Beginning in July of 2009, Vaughn periodically sought treatment for her conditions at two outpatient facilities: Mantachie Rural Health Care ("Mantachie") and the Region III Mental Health Center ("Region III"). Vaughn

---

[1] Vaughn claimed that she was wrongfully terminated from her position with Carlock Nissan for being "a whistleblower." On December 7, 2009, Vaughn commenced a federal action against Carlock Nissan in the United States District Court for the Northern District of Mississippi, alleging that she was entitled to unpaid overtime pay under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.,* and that her termination violated public policy. *See* Complaint, *Vaughan v. Carlock Nissan of Tupelo, Inc.*, No. 09-CV-00293 (N.D. Miss. Dec. 7, 2009), ECF No. 1.

No. 14-60115

first visited Mantachie on July 30, 2009 and reported symptoms of headaches, fatigue, and generalized anxiety. She also expressed trouble sleeping and changes in her sleep patterns.

On September 21, 2009, Vaughn reported similar symptoms at Region III. Specifically, Vaughn reported symptoms of depression, insomnia, and problems with her memory and concentration. She attributed her depressive symptoms to the loss of her position as a customer relations manager at Carlock Nissan. Vaughn was diagnosed as suffering from adjustment disorder with depression and insomnia, borderline personality disorder, and general anxiety. In addition, Vaughn was assessed using the Global Assessment of Functioning ("GAF") Scale, which is a diagnostic measurement of an individual's overall psychological functioning.[2] Vaughn received an overall GAF score of 60, which indicated that her symptoms were classified as moderate.

Vaughn's Region III treatment notes indicate that Vaughn complained of social anxiety and self-imposed isolation. For example, although Vaughn had once been extroverted, she now avoided places where she might encounter large groups of people. As a result, Vaughn no longer attended church and only socialized with small groups of people. Vaughn also reported increased forgetfulness and continuing problems with her concentration. Despite these issues, Vaughn generally appeared alert, oriented, and cooperative at her psychological appointments.

In addition, Vaughn enrolled in an online college business management program. Although most of her course work was completed online, Vaughn

---

[2] The GAF Scale assesses an individual's "psychological, social, and occupational functioning on a hypothetical continuum of mental-health-illness." American Psychiatric Ass'n: Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. Text Revision 2000) (DSM-IV-TR).

attended small seminar meetings with six to seven other students. According to Vaughn, she was able to attend these seminar meetings without increased anxiety. In May of 2010, Vaughn reported that she was maintaining a 4.0 grade average in her program, however, Vaughn's grades eventually began to slip and she was ultimately unable to complete her program as a result of failing one of her required courses.

Vaughn was referred to two psychologists to undergo consultive mental status examinations. Dr. Amy Morgan assessed Vaughn in September of 2010 and determined that Vaughn suffered from moderate limitations in maintaining concentration, moderate limitations in social functioning, and mild limitations with respect to the activities of daily life. Nevertheless, Dr. Morgan determined that Vaughn was capable of understanding simple instructions, could carry out routine and repetitive work-related tasks, and would be able to maintain concentration for two-hour periods.

Dr. Joe Edward Morris assessed Vaughn in September of 2011. Dr. Morgan assessed Vaughn's affect as elevated and noted that she appeared coherent and logical. Vaughn reported to Morgan that she was able to perform basic tasks such as doing chores around the house, driving short distances, managing her money, making routine purchases, and scheduling appointments. However, Vaughn exhibited limitations with respect to immediate recall and concentration. Based on his assessment, Dr. Morgan determined that Vaughn's psychological limitations would prevent her responding favorably to supervision and from interacting cooperatively with coworkers. In addition, Dr. Morgan determined that although Vaughn could understand and follow simple instructions in a clinical environment, her psychological limitations impaired her to the point where she was not able to perform routine and repetitive work-related tasks.

No. 14-60115

On November 30, 2011, an Administrative Law Judge ("ALJ") conducted a hearing at which Vaughn and a vocation expert testified. At the hearing, Vaughn, who was represented by counsel, testified that her daily functioning was severely compromised by her psychological symptoms. Vaughn did not allege that any physical limitation affected her ability to work.

According to Vaughn, her social anxiety made her avoid people and prevented her from being around family and friends. Vaughn admitted, however, that she could socialize in smaller groups of four or fewer people. Vaughn also testified that she experienced memory and concentration problems, which resulted in instances of forgetfulness and disorganized thinking. For example, Vaughn testified that she had once left her keys in the door of her home for a number of days. She also testified that she almost left her wallet at a store and her groceries in a supermarket cart. Despite these limitations, however, Vaughn was able to prepare meals for herself, keep her house in order, and make routine trips to the supermarket to make purchases. In addition, Vaughn took care of her father, who had suffered from a stroke, by periodically taking him to the doctor for his appointments.

In a decision dated March 6, 2012, the ALJ determined that despite her psychological limitations, Vaughn retained the functional capacity to perform a full range of work at all exertion levels with the following nonexertional limitations:

> The claimant is limited to unskilled, simple repetitive tasks; no contact/interaction with the public; occasional contact/interaction with co-workers and supervisors at a superficial level; and low stress work defined as little change in the work environment, little decisionmaking, and no strict production quota.

Next, based on the hearing testimony of a vocational expert, the ALJ determined that while Vaughn could not perform her past work, there were suitable alternate jobs in the economy for an individual with the same

5

No. 14-60115

vocational characteristics and work-related limitations as plaintiff. As such, plaintiff was not disabled under the Social Security Act and her application for benefits was denied.

## STANDARD OF REVIEW

Appellate review of the Commissioner's denial of disability benefits is limited to "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports his decision." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995)). In applying the substantial evidence standard, this Court may not "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's." *Apfel,* 209 F.3d at 452; *accord Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). Rather, any conflicts in the evidence are for the Commissioner to resolve, and where the Commissioner's "findings are supported by substantial evidence, they must be affirmed." *Apfel*, 209 F.3d at 452.

## DISCUSSION

To obtain entitlement disability benefits, a claimant must demonstrate that she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantially gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). To evaluate a claim of disability, the Commissioner conducts a five-step sequential analysis, which considers whether: (1) the claimant is presently working in substantially gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the

impairment prevents the claimant from adjusting to any other substantially gainful activity. 20 C.F.R. § 404.1520.

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). If, however, a claimant has a severe impairment that neither meets nor equals an impairment listed in Appendix 1 of the regulations, the Commissioner will assess her residual functional capacity ("RFC") to determine whether she can do past or alternative work at steps four and five of the analysis. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003); *Greenspan*, 38 F.3d at 236. A claimant's RFC is "the most [a claimant] can do despite [her] limitations." 20 C.F.R § 404.1545(1).

Vaughn first argues that the ALJ erred in determining that the severity of her mental impairments did not render her presumptively disabled at step three of the inquiry. In determining that Vaughn's impairments did not *ipso facto* render her disabled, the ALJ properly relied on the criteria provided in 20 C.F.R. Part 404, Subpart P, Appendix 1. Specifically, the ALJ determined that Vaughn was only mildly restricted in the "activities of daily living," had moderate difficulties with "social functioning," and had moderate difficulties with regard to her "concentration, persistence, or pace." This determination was based on evidence that Vaughn was able to perform household chores and cook for herself, took care of her father and helped him attend his doctor's appointments, enrolled in college level courses, and scored 60 on the GAF Scale, which indicated that her symptoms were only moderate. Although the ALJ credited some of Vaughn's subjective symptoms, she determined that objective evidence in the record indicated that Vaughn's symptoms were not so severe such that Vaughn was presumptively disabled. Sufficient evidence in the record supports the ALJ's resolution of this issue and the Court must

therefore affirm this determination. *See Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001) (explaining that the ALJ's resolution of conflicting evidence in the record is entitled to considerable evidence); *Patton v. Schweiker,* 697 F.2d 590, 592 (5th Cir. 1983) (noting that any conflicts in the evidence are to be resolved by the Commissioner).[3]

Vaughn next argues that the ALJ erred in determining the scope of her RFC and in using her RFC to conclude that she could perform alternative work in the economy. Her argument is premised upon what she contends is a logical inconsistency in the ALJ's determination. With respect to Vaughn's RFC, the ALJ determined that Vaughn had the capacity to perform a full range of work at all exertional levels but with certain nonexertional limitations due to her mental impairments. The ALJ then found that Vaughn could not perform her past relevant work due to these limitations. This past relevant work, which included positions such as receptionist and customer relations manager, consisted entirely of jobs classified as sedentary and light work. Nevertheless, relying on the testimony of the vocational expert, the ALJ found that Vaughn could perform alternative work in the economy, in positions classified as medium work, which by definition have greater physical requirements than

---

[3] For the first time in her reply brief, Vaughn argues that the ALJ erred in failing to take judicial notice of an order entered by the United States District Court for the Northern District of Mississippi appointing a next friend," which is a representative equivalent to a guardian ad litem, to represent Vaughn in a federal action she filed against her former employer Carlock Nissan. *Vaughan v. Carlock Nissan of Tupelo, Inc.,* No. 09-CV-00293 (N.D. Miss. Feb. 24. 2012), ECF No. 180. Vaughn's attorney requested this relief because Vaughn was unwilling to "concede" her alleged Title VII claim even though her attorney repeatedly informed her that she had never asserted such a claim and that the facts of her case did not warrant one. *See id.* After a hearing, the district court granted Vaughn's attorney's motion but noted that "the court, of course, makes no finding as to plaintiff's competence related to any issue save the present one." *Id.* Notwithstanding the fact that this Court does not address arguments raised for the first time on reply, even by *pro se* litigants, there is no indication that Vaughn in fact raised this issue during her administrative proceedings. In any event, the district court's order does not provide a basis to alter the Court's conclusion that substantial evidence supported of the ALJ's determination.

Vaughn's past positions.     There is no logical inconsistency in this determination.

The regulations classify jobs as consisting of, *inter alia*, sedentary, light, or medium work.  20 C.F.R. § 416.967.  This classification is based on the physical exertional requirements of the job. *Id.*; *see also* 20 C.F.R. § 404.1569a.  Medium work, for example, refers to jobs in which an individual would be expected to "lift[] no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 416.967(c).  Light work, in turn, refers to jobs in which an individual would be expected to "lift[] no more than 20 pounds," but might also be required to perform a "good deal of walking or standing."  20 C.F.R. § 416.967(b).

The regulations also distinguish between exertional and nonexertional limitations.  *See* 20 C.F.R. § 404.1569a.  A limitation is exertional if it affects an individual's "ability to meet the strength demands of jobs," such as "sitting, standing, walking, lifting, carrying, pushing, and pulling."    20 C.F.R. § 404.1569a(a).  A limitation is nonexertional if it affects an individual's ability with respect to the demands of the job that are not related to strength, such as difficulties in functioning caused by anxiety, depression, or problems with concentration. *See* 20 C.F.R. § 404.1569a(c).  Thus, it is a claimant's exertional limitations, rather than his or her nonexertional limitations, that affect a claimant's ability to perform a particular classification of work under the regulations.  *See* 20 C.F.R. §§ 4404.1569a, 416.967.

In her disability application, Vaughn claimed that she could not work solely because of her mental impairments.  At her hearing, Vaughn testified only about those impairments and the nonexertional limitations that resulted from those impairments.  Moreover, Vaughn's medical records did not provide any indication that Vaughn suffered from a medically determinable physical impairment or from a substantial physical limitation.  Accordingly, the ALJ's

determination that Vaughn was unable to perform her past relevant work due to her nonexertional limitation, but had the capacity to perform alternative work at a higher exertional level, was both logically consistent and supported by substantial evidence.

Finally, despite failing to articulate any exertional limitation during her hearing or in her initial application documentation, Vaughn argues that the medical records she submitted subsequent to the ALJ's determination demonstrate that she was incapable of performing medium work. Specifically, Vaughn points to a notation referencing her "back pain" in a supplemental record that she submitted to the Appeals Council in an effort to seek further administrative review of the ALJ's decision. This reference was made during Vaughn's visit to an urologist in the context of an overview of Vaughn's medical history. Other than the mere mention of the existence of back pain, however, the record provides no information regarding the degree of its severity or its effect on Vaughn's ability to function. The Appeals Council considered this evidence and determined that it did not provide a basis for changing the ALJ's decision. Substantial evidence supports this determination.

The Commissioner need only include limitations in the RFC determination that are supported by the evidence in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir.1991); *Hames v. Heckler*, 707 F.2d 162, 165-66 (5th Cir. 1983). Moreover, "if sufficient medical or other evidence is not provided by the claimant, [the Commissioner] is required to make a decision based on the information available." *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (citing 20 C.F.R. § 404.1516). Although, the Commissioner may be required to seek further information regarding a claimant's disability under certain circumstances, isolated references to a limitation without more do not implicate this duty. *See id.*; *see also Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989).

No. 14-60115

Here, the mere reference to back pain that was noted by Vaughn's urologist did not indicate whether Vaughn was in any way limited in her ability to physically exert herself. Further, records memorializing Vaughn's follow-up sessions with her urologist continue to reference the urinary issues she was experiencing but do not include any mention of ongoing back pain. Indeed, there is no evidence in the administrative record that Vaughn ever sought any medical treatment for this issue. Accordingly, the Appeals Council did not err in determining that Vaughn's additional medical evidence failed to provide a basis to alter the ALJ's decision. The determination that Vaughn was capable of performing work at a medium exertional level was supported by substantial evidence.

## CONCLUSION

For the reasons above, the judgment of the district court is AFFIRMED.